DOMENGEAUX, Judge.
This is a suit in tort filed by plaintiff-appellant, Earl Thibodeaux, against defendant-appellee, Central Louisiana Electric Company (hereinafter referred to as CLECO) resulting from damages allegedly caused by the defendant’s employees on or about June 7, 1972, while on the property of the plaintiff. After trial on the merits judgment was rendered in favor of the plaintiff and against the defendant in the sum of $40.00. From said judgment plaintiff has appealed and CLECO has answered the appeal.
The plaintiff filed this suit alleging essentially that on or about the aforementioned date the defendant company through its employees crossed his lands, thereby damaging a two-acre tract planted in “Bahia” grass, and left a certain wire gate open which divides his land from that of his neighbor, Curry McCauley. As a result of the latter act the plaintiff asserts that one of his bulls crossed through the improperly closed gate onto the adjacent lands causing him several days of inconvenience in searching for the bull as well as necessitating the sale of the animal. Plaintiff also alleges that he had to bear the cost of repairing the aforementioned gate.
Defendant in turn asserts that it did not damage plaintiff’s pasture planted in grass and also argues that its employees were very careful in closing the aforementioned wire gate each time they used the gate.
*898 The only real question before us therefore is a factual one. Plaintiff testifies to the effect that on June 7, 1972, a representative of the defendant came to his house asking permission to cross his land so the company might have access to the adjacent property owned by Curry Mc-Cauley, in order to change some poles on their right-of-way. This request was made because passage over the adjoining property was difficult due to the muddy condition of the area. Plaintiff at this time allowed the company’s employees to cross his land but instructed them to be sure that they closed a wire gate which divided the two tracts of land.
The gate in question is of the type constructed by making a cut in the barbed wire fence adjacent to a post where the gate is intended to be, tying another post to the loose strands destined to be the gate, which post then stands parallel to the first post mentioned when the gate is closed. Another post is then attached to the strands of wire in the middle of the gateway, removable from its hole in the ground at that point, in order to give the gate some rigidity when closed. Such a gate is secured in an enclosed position by putting the center post in place, running the bottom of the post at the end of the gate through a loop attached to the stationary post adjacent to the gateway, thereafter looping another strand of wire at the top of that post once the bottom is secured in place.
Allegedly, after working three or four days in this area the defendant’s employees left the land of plaintiff’s neighbor through this gate without properly shutting same. Plaintiff testified to the effect that several days after the CLECO employees left he noticed the absence of one of his bulls. Shortly thereafter he and a nephew, Charles Ray Guillory, started searching the fence line to find a possible place where the bull could have escaped. Allegedly they came upon the aforementioned gate in question and found it partially opened. Plaintiff testified that he saw prints of three different cattle going through the gate and thereafter found the bull and the two other animals on McCauley’s property.
Plaintiff also asserts that the defendant’s employees left their right-of-way towards the rear of his acreage and crossed a two-acre tract planted with “Bahia” grass. He alleges that at this time the heavy trucks owned by CLECO made ruts in the area thereafter requiring him to relevel the land and replant the grass. It was also his testimony that he called CLECO informing them of what had happened and asked that they come out and fix the gate. He further stated that CLECO later called telling him that they would not come out and he and a helper were forced to fix the gate themselves.
Finally, it is argued that by reason of the bull getting out onto his neighbor’s property (for the second time) that Thibo-deaux was forced to sell the animal. Allegedly, because of the bull’s background and loss of weight due to fighting with bulls owned by McCauley, plaintiff asserts that the bull sold for less than the amount he originally purchased it for and that he was forced to buy another bull, the difference being approximately $300.00.
On the other hand, several employees of CLECO testified to the effect that the defendants did use the aforementioned gate, but that each time they entered and left the plaintiff’s premises the gate was carefully examined to be sure that it was closed. The two particular employees closing the gate at the last instance of use by CLECO testified explicitly that the gate was securely closed when they left. It was also the testimony of the employees that they did in fact leave their right-of-way to get to the wire gate because of gulleys or impassible places along their right-of-way, but that there was no damage to plaintiff’s land.
According to the trial judge’s conclusions, the plaintiff failed to establish by a *899 preponderance of the evidence causal negligence or cause in fact against defendant’s employees in connection with the bull’s escape or for any damage to the gate. He did, however, find that plaintiff’s pasture planted in grass was in fact damaged when the defendant’s employees operated their equipment beyond CLECO’s right-of-way. As a result he awarded damages in the amount prayed for, i. e. $40.00.
Plaintiff appeals, asking for additional damages, including the difference in the prices of the bulls bought and sold, as afore-mentioned, as well as the costs of repairing the fence. Defendant answered the appeal alleging that the judgment in favor of the plaintiff was in error.
Conclusions of the trial court in regard to factual matters will not be disturbed in the absence of a showing of manifest error in the great discretion afforded the trial court, especially when questions of fact have been resolved by testimony of witnesses who appeared before the trial judge. See Wycoff v. State Farm Mutual Ins. Co., 286 So.2d 410 (La.App. 3rd Cir. 1973). In addition, the trial court’s conclusions on conflicting contentions will be affirmed on appeal if there is evidence in the record to support them. McVay v. McVay, 276 So. 2d 926 (La.App. 3rd Cir. 1973). We find no manifest error in the factual conclusions of the trial judge.
Plaintiff also asserts that this case calls for the application of Louisiana Civil Code Articles 744 and 753 which would arguably place the obligation upon the defendant to have constructed a “better” gate than the one in question or alternatively become liable for any damages occasioned. By reason of our aforementioned holding, that no liability has been established on the part of defendant concerning the gate, we will not consider this argument.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant’s costs'.
Affirmed.